MILLSAPS v. JOHNSON et al.   (No. 1153.)

(Court of Civil Appeals of Texas.   Amarillo.
May 16, 1917.   Rehearing Denied
June 13, 1917.)

On Motion for Rehearing.

1. CORPORATIONS ⬡499 — FAILURE TO PAY
FRANCHISE TAX—RIGHT TO SUE OR DEFEND
—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 7399, providing that when a corporation
fails to pay its franchise tax, and the forfeiture
of its right to do business in the state has been
properly recorded by the secretary of state, it
cannot sue nor defend a suit, except one to for-
feit its charter, the secretary of state must enter
on the margin of the record in his office the
words "Rights to do business forfeited," and the
date of the entry, before the company's right
to sue or defend for nonpayment of its fran-
chise tax is denied.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 1910, 1911, 1913–1919, 2030.]

2. CORPORATIONS ⬡592—DISSOLUTION—FAIL-
URE TO PAY FRANCHISE TAX.

The failure of a corporation to pay its
franchise tax does not ipso facto work a disso-
lution.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 2373–2375, 2378, 2379, 2381, 2390,
2401.]

3. CORPORATIONS ⬡211(6) — STOCKHOLDERS'
SUIT—PLEADING—ALLEGATION.

In a suit by corporate stockholders, the peti-
tion alleged that a majority of the directors,
without the knowledge and consent of the stock-
holders, but at the direction of a defendant, con-
veyed to another defendant, as trustee for the
benefit of the creditors of the corporation, all of
the assets of the company, and that the directors,
without the consent of stockholders, agreed that
the private trustee should convey the property
to a creditor of the company to liquidate the com-
pany's debts at 50 cents on the dollar. Held,
that the allegation was that the company had
made a chattel mortgage for the benefit of its
creditors.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 820, 821.]

4. PLEADING ⬡34(2)—SPECIFIC ALLEGATION.

Specific allegations will control a general
statement in a pleading.

[Ed. Note.—For other cases, see Pleading,
Cent. Dig. § 68.]

5. CORPORATIONS ⬡210—ACTIONS—PARTIES—
TRUSTEE FOR CREDITORS.

Where a corporation did not make a gen-
eral assignment for the benefit of creditors, but
made a conveyance in trust to a private trustee
for creditors, title to a cause of action against a
director of the company for corruptly disposing
of its assets was vested in the trustee.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 808–813.]

6. TRUSTS ⬡61(3)—TERMINATION.

Where a corporation conveyed its property in
trust to a private trustee for the benefit of cred-
itors, the trust terminated when the property
was sold and the debts satisfied.

[Ed. Note.—For other cases, see Trusts, Cent.
Dig. § 85.]

7. CORPORATIONS ⬡206(4), 211(3) — STOCK-
HOLDERS' ACTION—DEMAND FOR SUIT ON DI-
RECTORS.

In a stockholders' suit, if the facts as alleged
show that defendants charged with wrongdoing
constitute a majority of the directors or man-
aging body at the time of commencing suit, or
that the directors, or a majority, are under the
control of a wrongdoing defendant, so that re-
fusal of the managing body, if requested to
bring suit in the name of the corporation, may
be inferred with reasonable certainty, the stock-
holders' action may be maintained without alleg-
ing or proving any notice, request, demand, or
express refusal.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 795, 816.]

8. CORPORATIONS ⬡212—ACTIONS—PRESUMP-
TION OF OWNERSHIP OF REALTY.

In a stockholders' suit, the court must pre-
sume that the company's assignment to a private
trustee would not have undertaken to convey
realty unless the company really owned it.

9. CORPORATIONS ⬡455—COMMON-LAW
MORTGAGE—SEAL.

Where a corporation's attempted assignment
of property to a private trustee for sale for the
benefit of creditors was void as a conveyance un-
der the statute, being a common-law mortgage,
it was not void as such because of the company's
failure to authenticate it by the corporate seal.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 1801–1803.]

10. CORPORATIONS ⬡210 — STOCKHOLDERS'
SUIT—PLEADING.

In suit by corporate stockholders to recover
property of the company wrongfully disposed of
by a director, the company, dissolution of which
was not set up in the pleadings nor established
by the facts, was not only a proper but a neces-
sary party, and an assignee of the company as
private trustee to pay specified debts of the com-
pany was not a proper party.

[Ed. Note.—For other cases, see Corporations,
Cent. Dig. §§ 808–813.]

11. TRIAL ⬡255(13) — INSTRUCTIONS—FAIL-
URE TO ASK SPECIAL CHARGE—SUBSTANTIAL
OMISSIONS.

Where defendant failed to ask a special
charge, supplying an omission in an instruction,
he cannot complain of the omission, though the
definition omitted was necessary.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. § 639.]

12. CORPORATIONS ⬡212 — STOCKHOLDERS'
SUIT—DOMINATION OF DIRECTORS BY ONE—
SUFFICIENCY OF EVIDENCE.

In suit by corporate stockholders, evidence
held sufficient to sustain the jury's finding that
a defendant, a director, improperly dominated
and controlled a majority of the directors.

13. CORPORATIONS ⬡213 — STOCKHOLDERS'
SUIT—JUDGMENT.

In suit by corporate stockholders to recover
assets of the company wrongfully disposed of by
a director, judgment must be for and in behalf
of all stockholders and in favor of the company,
not for plaintiffs individually for their respective
interests in the amount of the recovery.

14. CORPORATIONS ⬡213 — STOCKHOLDERS'
SUIT—DECLARING FORFEITURE OF CHARTER.

In such suit the trial court improperly de-
clared the company's charter forfeited, where the
state was not a party, and the record showed
that the company was still an existing corpora-
tion, not showing that plaintiffs as individuals,
or that the corporation itself, ratified the illegal
acts alleged to have been committed by the dom-
inating director and the board.

Appeal from District Court, Wichita Coun-
ty; M. N. Bonner, Judge.

Action by W. J. Johnson and others against
Due Millsaps and others. From the judg-
ment, defendant Millsaps appeals. Judgment
affirmed as reformed, and rendered.

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Carrigan, Montgomery & Britain, of Wichita Falls, for appellant. Weeks & Weeks, of Wichita Falls, for appellees.

HALL, J. This action was brought by W. J. Johnson, D. W. Colley and wife, R. H. Henry, J. H. Endacott, J. R. Baker, and W. M. Waldock against Due Millsaps, C. L. Murrie, and the McGrattan-Millsaps Company, a corporation. Plaintiffs alleged that each of them was a stockholder in the McGrattan-Millsaps Company, and held such stock in January, 1913; that said corporation had a capital stock of $40,000, divided into shares of $10 each; that defendant Due Millsaps was at all times a director, and that the other directors were Hugh McGrattan, I. E. Rose, and Frank McGrattan and J. H. Endacott; that the said Millsaps assumed to act as manager of said corporation up to about March 1, 1914, and that Endacott was not an active director; that the corporation operated a dry goods store at Weatherford, Tex., up to the latter part of 1914, and that in the fall of 1913 put in a stock of dry goods at Wichita Falls, Tex., and conducted the business there until about March 1, 1914; that early in the year of 1914 P. H. Pennington, C. J. Barnard, and Due Millsaps agreed to organize two mercantile corporations at Wichita Falls, one to be known as the P. B. M. Company, and one as the P. H. Pennington Company; that Pennington and Barnard each owned a stock of goods in Wichita Falls, Tex.; that the Pennington Company was to have a capital stock of $25,000, and the P. B. M. Company of $75,000, and that both were to be operated by Pennington, Barnard, and Millsaps, and that each of them was to furnish, either in cash or merchandise, one-third of the capital of each corporation; that Barnard and Pennington each conveyed to said corporation merchandise of value equal to the stock subscribed for by them respectively, and that Due Millsaps took from McGrattan-Millsaps Company's stock at Wichita Falls goods worth $36,500, and placed $25,000 worth of the same in the P. B. M. Company, and $11,500 into the P. H. Pennington Company, and that in doing so he acted without authority of the corporation, and converted the goods to his own use, and that neither said corporation nor its stockholders had ever received anything for said goods. Plaintiffs further alleged that, if Millsaps was authorized to transfer the goods, that he had converted whatever shares of stock or money he received as the consideration for said merchandise and fixtures to his own use, and that the stock was worth 100 cents on the dollar, and that thereby the McGrattan-Millsaps Company and its stockholders were damaged $36,500; and, further, that if the McGrattan-Millsaps Company received anything, that the consideration was wholly inadequate, and was not agreed to and accepted by the corporation and that he had no right to purchase either the goods or stock from said corpora-

tion; that the said Millsaps still owned a part of the stock in the P. B. M. Company and in the Pennington Company, but claimed the same as his own, and had repudiated his trust relationship, and that the corporation and stockholders were entitled to recover the value of the goods and fixtures or the value of the stock. The petition then proceeds as follows:

"Plaintiffs further allege that they are informed that the said defendant Due Millsaps, in consideration of the said merchandise and fixtures taken by him in the first instance, as aforesaid and the stock obtained for same in the second instance, has either paid or arranged to pay a portion of the debts of the McGrattan-Millsaps Company, and being in the sum of about $20,000, and that, as part of said consideration, the said defendant Due Millsaps canceled $5,000 of his own stock in the McGrattan-Millsaps Company; but plaintiffs allege, if this be true, that this consideration is wholly inadequate, and that the said property so converted was worth, as aforesaid, the sum of at least $36,500, and in the cancellation by the said Due Millsaps of $5,000 of his stock in the said McGrattan-Millsaps Company was not any remuneration of any value of any kind to the McGrattan-Millsaps Company, and was of no benefit to said company, and was not agreed to by any of the stockholders or directors in said company; so that, if the said defendant Due Millsaps has paid the sum of $20,000, which these plaintiffs deny, then the said defendant Due Millsaps is still indebted to the said McGrattan-Millsaps Company and the stockholders thereof in the sum of $16,500; that as soon as said merchandise and fixtures were appropriated by the said defendant Due Millsaps, as aforesaid, which act plaintiffs alleged took place about March 1, 1914, the said defendant Due Millsaps abandoned the said McGrattan-Millsaps Company, and devoted all of his time and attention to the said P. B. M. Company and the said P. H. Pennington Company, and thereby went in competition with the said McGrattan-Millsaps Company, and was in competition with same as long as the said McGrattan-Millsaps Company survived in Wichita Falls, Tex., which plaintiffs alleged was some two or three months, and by this act on the part of the defendant Due Millsaps the said McGrattan-Millsaps Company was forced out of business in Wichita Falls, and the value of plaintiffs' stock in said McGrattan-Millsaps Company, which but for the wrongful acts of the said defendant Due Millsaps was worth par, and was made to depreciate in value until the same was worthless, and that said defendant Due Millsaps thereby wrongfully and maliciously destroyed the said McGrattan-Millsaps Company's store in Wichita Falls, and deprived these plaintiffs of the value of their stock in the said company, and by virtue of these facts the said plaintiffs are entitled to recover of the said defendant Due Millsaps the sum of $5,000 as exemplary damages.

"Plaintiffs further allege that they bring this suit as stockholders in the said McGrattan-Millsaps Company for the use and benefit of said company, and for themselves as stockholders, and for the other stockholders in the same, and they allege that the board of directors of said corporation, at the time of the institution of this suit, and at all times since the wrongful acts complained of, is and was dominated and controlled by the said Due Millsaps, and that the said Due Millsaps and the majority of the board of directors were in league with each other for the purpose of assisting and enabling the said Due Millsaps to acquire the property of the said Millsaps Company, their plan being for the said Due Millsaps to take the assets, and for the said Due Millsaps to compensate his co-

partners after he had made a successful getaway, and that the said Due Millsaps at all such times influenced and controlled the vote of a majority of said directors on this account, and he thus caused them to disregard their true relation and obligations to the stockholders of the said company, and overpersuaded them, and misrepresented to some of them his true intention, so that they were induced to vote at said meetings during said times as directors, by the said Due Millsaps, and the majority of said directors are still aiding and assisting the said Due Millsaps in completing the fraud which he had perpetrated upon plaintiffs herein and other innocent stockholders; that the two directors, Hugh McGrattan and Frank McGrattan, were recompensed for their acts in this connection by being permitted to buy accounts of the said McGrattan-Millsaps Company at Weatherford, Tex., for a sum much less than their reasonable value, and the said I. E. Rose was influenced to so vote by the promise of being paid in full for his stock in said company, which promise was fulfilled by the said Due Millsaps long after said company had become dormant, and after its stock had become worthless; and plaintiffs allege that it will be useless and futile to apply to said board of directors to bring this suit against the said Due Millsaps, because the majority of the said board of directors are interested in seeing that the said Due Millsaps gets away with the property that he has wrongfully taken as aforesaid.

"Plaintiffs further allege that the said Due Millsaps and the said directors, except the said J. H. Endacott, are in league with each other, as aforesaid, and that they own and control a majority of the stock of said corporation, and it would be useless and futile to apply to the stockholders to bring said suit, and said stockholders are broadly scattered, and it would be very difficult to get them to attend a meeting of the stockholders in said corporation, and it would be useless to apply to said board of directors or managing officers of said corporation to call a meeting of such stockholders for the purpose of authorizing the bringing of this suit on behalf of said corporation to collect the moneys herein sued for as the said Due Millsaps and the other directors and managing officers of said corporation, except the said J. H. Endacott, are parties to the illegal and fraudulent transaction above set forth, and are indirectly interested, as plaintiffs allege, in the fruits of such illegal transaction; that said directors, except said Endacott, have tried to prevent this suit from being brought, and have tried to induce some of plaintiffs to withdraw from same, and have failed to hold their annual meetings for 1914 and 1915, so that new directors could be elected, and they wanted to remain in control of said company to prevent the company from bringing or prosecuting this suit, and I. E. Rose resigned as director, in January, 1915, and there has not been a quorum of directors available since that time.

"Plaintiffs further allege that the said McGrattan-Millsaps Company has no power and right, under the laws of the state, to bring or maintain this suit, in that the said corporation has failed and neglected to pay its franchise tax for this year, and has ceased to exercise its corporate powers and privileges, and has ceased to do business of any character since January 16, 1915, and has not been a going concern, but has been dormant in every respect and was practically so six months prior to January 16, 1915; and plaintiffs further allege that on or about January 16, 1915, a majority of the directors of said corporation, without the knowledge and consent of the stockholders thereof, and without the knowledge and consent of the plaintiffs, but at the will and direction of the said Due Millsaps, conveyed to the defendant C. L. Murrie, as private trustee, for the benefit of the creditors of the said McGrattan-Millsaps Company, all of the assets remaining and belonging to the said company, of every nature, which plaintiffs allege amounted to $30,000 worth of merchandise, fixtures, live stock, accounts receivable, and money in the bank, and that said board of directors, without the consent of the stockholders in said corporation, and without the knowledge and consent of these plaintiffs, at the will and direction of the said Due Millsaps, agreed that the said private trustee should convey the said property, which conveyance was made to one of the creditors of the said McGrattan-Millsaps Company, in order to liquidate the debts then outstanding against the said company, at the basis of fifty cents on the dollar, which debts plaintiffs now allege have been liquidated in full, and that the said McGrattan-Millsaps Company now has no liability of any kind or character, and that this cause of action set up herein by these stockholders is the only asset which is known to these plaintiffs, and if recovered it is subject to distribution among the stockholders of said corporation as their interest in said corporation may appear; and, for all of the reasons above set forth, the plaintiffs allege that they have a right to bring and maintain this suit in their own names, for their benefit, and for the interest of all the stockholders in the McGrattan-Millsaps Company; but plaintiffs allege that the said defendant C. L. Murrie is made a party defendant herein so that, if the court should determine that these assets when recovered were among those conveyed to said trustee, that then these plaintiffs be allowed to prosecute this suit for the benefit of the said trustee, in his capacity stated, and that the recovery herein be for the benefit of the rightful beneficiary or said trustee; and plaintiffs allege that while he was appointed trustee for the benefit of the creditors, that the creditors have all been satisfied, and any property remaining in his hands when these assets are recovered by him is subject to distribution among all of the stockholders of the McGrattan-Millsaps Company."

Neither McGrattan-Millsaps Company nor C. L. Murrie filed any answer. The defendant Due Millsaps answered by general and special demurrers, all of which were overruled, by general denial, and by special answer, the material parts of which are as follows:

"For further answer herein this defendant says that in the fall of the year 1913, that the McGrattan-Millsaps Company was in financial difficulties, and was unable at that time to pay its debts, of which at that time it owed a large amount, and that about the 6th day of October, 1913, the directors and practically all of the stockholders of said corporation, including all of the plaintiffs in this case, agreed that its stock of merchandise then situated at Wichita Falls, Tex., should be sold in part to a corporation to be organized and operated at Wichita Falls, Tex., and to be known as the P. B. M. Company, and that the remainder of its stock, including goods and fixtures at Wichita Falls, Tex., might be sold and delivered to a firm or corporation in Wichita Falls known as the P. H. Pennington Company, and that for said goods it should receive stock in the said P. B. M. Company when incorporated to the amount of $25,000, and an interest in the P. H. Pennington Company equal to the goods and merchandise turned over to said company, and further agreed to pledge any and all such stock and interest which it might receive for said goods to secure the creditors of the McGrattan-Millsaps Company in the payment of their debts, and that at said time it was contemplated by said stockholders and agreed that said Due Millsaps, the defendant herein, should represent said corporation in said proposed transaction, and should hold said stock or interest in trust for said corporation, its stockholders and creditors, and it was known at

said time to said stockholders and each of them, that the said Due Millsaps had made a contract or agreement, subject to the approval of the said McGrattan-Millsaps Company, to carry out the transaction as herein above set out, and that before said corporation was consummated by the delivery of said goods, and at a special meeting of the stockholders of the said McGrattan-Millsaps Company, held about December 8, 1913, the directors of said company directed that goods of said company at Wichita Falls, to the invoice value of $25,000, should be sold and delivered to the said P. B. M. Company, and that the remainder of said goods, merchandise, and fixtures be sold and delivered to the P. H. Pennington Company; that at said meeting plaintiff J. H. Endacott was present in person, and all the other plaintiffs were present and represented either in person or by proxy, and at said meeting it was fully discussed and agreed and fully understood that said sale of said merchandise and fixtures to the P. B. M. Company and the P. H. Pennington Company should be made for stock in the P. B. M. Company, and for stock or interest in the P. H. Pennington Company, and that said facts were known to all of the plaintiffs herein, and were also known to all of the directors of said corporation, and that all of said persons were fully informed as to the nature and details of the proposed transaction; that pursuant to said authority and agreement that the goods of the said McGrattan-Millsaps Company and fixtures of the invoice value of about $25,000 were delivered to the P. B. M. Company, and thereafter, when said company was incorporated, stock was issued therefor to the amount of $25,000, which was held by the defendant Due Millsaps, in accordance with the agreement and understanding made with the directors and stockholders, for the benefit of and to secure the creditors of said McGrattan-Millsaps Company, and the said Due Millsaps held said stock as trustee for said company and its creditors; that the P. H. Pennington Company was not incorporated until long after a portion of said stock of goods had been delivered to it, and that the portion of said stock of goods so delivered to the said P. H. Pennington Company was of the cost and value of $9,-629.65, but the actual cash market value both of said goods delivered to the P. B. M. Company and to the P. H. Pennington Company was not more than fifty cents on the dollar; that all of the above facts were fully known to all of the directors and stockholders and to all of the plaintiffs herein at the time said transaction occurred, and all of the officers and directors and all of the stockholders of the said McGrattan-Millsaps Company, including the plaintiffs herein, acquiesced in, ratified, and agreed to the entire transaction, and that all of said directors, officers, and stockholders are here now, by reason of the above-entitled facts, estopped to question the same or seek to set the same aside; that after said sales to the P. H. Pennington Company and the P. B. M. Company, above referred to, the P. H. Pennington Company sold part of the goods referred to, together with other stock belonging to said company, and, in order to reduce the amount invested in the P. H. Pennington Company, the P. H. Pennington Company paid back to McGrattan-Millsaps Company, through Due Millsaps, the sum of about $1,100; that, however, in calculating the amount to be paid, the said P. H. Pennington Company made an error, and thereafter called upon defendant Due Millsaps to restore to P. H. Pennington Company a part of the money so paid, amounting to about $100, and the said Due Millsaps did repay to said P. H. Pennington Company said amount; that of said sum of about $1,000, being the net amount received from said P. H. Pennington Company, this defendant paid to the McGrattan-Millsaps Company in cash $800, and applied the remainder of said sum to the payment of himself of certain interest which

he had paid out of his personal funds upon the indebtedness of the said McGrattan-Millsaps Company for all of the money so received by him from P. H. Pennington Company; that in the early part of the year 1914 the McGrattan-Millsaps Company was indebted to the First National Bank of Wichita Falls, Tex., in the sum of $5,000, and that the said McGrattan-Millsaps Company, when the same became due, was unable to pay the same; that said indebtedness was secured by the indorsement of this defendant, and that some time early in the year 1914 the said First National Bank refused to renew said indebtedness upon the note of said McGrattan-Millsaps Company, but did agree that if this defendant would give his own note for $5,000, and place as collateral therewith $5,000 stock of the P. B. M. Company, that the said bank would accept the same and extend the time for the payment of said indebtedness, and that this defendant did give his own note for said $5,000 to said bank, and did deposit as collateral therefor, by authority of the board of directors of the McGrattan-Millsaps Company, $5,000 of the stock of the P. B. M. Company, and that this defendant thereafter paid and settled said note out of his own funds.

"This defendant further alleges that on or about July 1, 1914, the said McGrattan-Millsaps Company was due this defendant the said sum of $5,000, and that on the 1st day of July, 1914, at a meeting of the directors of the McGrattan-Millsaps Company, this defendant stated to said directors, and all of them, that he would like to purchase a portion of the stock, then belonging to said McGrattan-Millsaps Company, in the P. B. M. Company, and that the P. H. Pennington Company, himself, and that he believed he could sell a portion of said stock to other parties, and that thus the said McGrattan-Millsaps Company would be able to realize on said stock for the purpose of paying its debts; that the said directors then knew and understood that this defendant expected to take a part of said stock himself, and dispose of the remainder for the best price obtainable by him, and that at said meeting on July 1, 1914, the directors of said McGrattan-Millsaps Company did agree to sell to this defendant all of its stock in the P. B. M. Company and the P. H. Pennington Company for the sum of $25,000, it being understood at that time that the $5,000 which had been assumed or paid by this defendant to the First National Bank of Wichita Falls, Tex., should also be taken as a part of the purchase price for said stock and interest; that thereupon an order was made and entered by said board of directors that the said stock should be sold to Due Millsaps for the sum of $20,000, and the surrender by the said Due Millsaps of $5,000 of stock then owned by him in the McGrattan-Millsaps Company, and while said order did not in fact show that the $5,000 which had been assumed or paid by the defendant to the First National Bank of Wichita Falls, Tex., was to be taken and considered as a part of the purchase price for said stock, that yet, in truth and in fact, it was so understood and agreed by all of the parties at said time, and at said time said directors further ordered that the said $20,000 which was still to be paid for said stock should be applied upon the debts of the said McGrattan-Millsaps Company to its creditors; that at the time said order and trade above set out were made there was present and participated all of the directors of said corporation except this defendant and I. E. Rose; that this defendant did not vote or participate as a director at said meeting and that said I. E. Rose who was a director and who was not present at said meeting agreed and consented to said transaction in writing and that all of said directors knew and understood at the time that this defendant was to personally take part of said stock and sell or dispose of the other part as best he was able and that

in consideration of said stock he was to release the company from liability to him for the $5,000 paid or secured by him to the First National Bank of Wichita Falls, Tex., and should pay in addition thereto $20,000 upon the indebtedness of the said McGrattan-Millsaps Company, and surrender the $5,000 of stock held by him in said McGrattan-Millsaps Company; that, pursuant to said contract and agreement so made by said directors, the said Due Millsaps did take the said stock in said P. B. M. Company and P. H. Pennington Company, and did sell and dispose of a portion thereof and kept the remainder, and did in consideration therefor, in addition to the sum of $5,000, already paid or secured to the First National Bank of Wichita Falls, Tex., pay the full sum of $20,000 upon the indebtedness of the said McGrattan-Millsaps Company; that this defendant paid and secured and caused the McGrattan-Millsaps Company to be released from liability for the following debts then due by said McGrattan-Millsaps Company, to wit: To John V. Farwell & Co., of Chicago, $11,000; to the First National Bank of Weatherford, Tex., $6,000; to Rose Manufacturing Company, $1,500; to Sanger Bros., $1,500; and to release the said McGrattan-Millsaps Company from any liability to him for the $5,000 which he had already paid or secured to the First National Bank of Wichita Falls, Tex., the said defendant did indorse and surrender stock certificates for the $5,000 stock in the McGrattan-Millsaps Company; that said entire transaction was made in the utmost good faith, and that all the facts and circumstances were well known to all of the directors and stockholders of the McGrattan-Millsaps Company, and that in truth and in fact the amount so paid by him, as above alleged, for said stock in the P. B. M. Company, and for said stock and interest in the P. H. Pennington Company, was the full and fair market value of said stock and interest, and that said stock at said time was not worth and could not be sold for par value, but in truth and in fact the price paid by this defendant was the full and fair value of said stock at said time; and this defendant further alleges that the directors of said McGrattan-Millsaps Company were fully informed with reference to all the facts affecting the value of said stock, and that the said directors and officers made said trade with this defendant in good faith, and acting in the utmost fairness and honesty in what they believed was for the best interest of the stockholders in said corporation; that one of the plaintiffs herein, to wit, J. H. Endacott, was at said time a director in said corporation, and personally agreed and consented to said transaction, and that all of the plaintiffs and all of the stockholders of said corporation had full knowledge of the entire transaction, and acquiesced therein and consented and agreed thereto."

Defendant Due Millsaps further denied all allegations charging that he dominated and controlled the directors and stockholders, and alleged that in January, 1915, the McGrattan-Millsaps Company made an assignment to C. L. Murrie, by which it conveyed all its property, of every character, to C. L. Murrie for the benefit of its creditors, and that if the corporation had any valid claim against the defendants it passed to said assignee.

The case was tried by a jury upon special issues submitted by the court, and upon the return of the verdict judgment was rendered against Due Millsaps in favor of W. J. Johnson for $628; in favor of R. H. Henry for $419; in favor of W. H. Waldock for $314.-25; in favor of D. W. Colley and wife for $209.50; in favor of J. R. Baker for $104.75;

and it was further decreed that plaintiff Endacott take nothing, and that plaintiff take nothing against the McGrattan-Millsaps Company and C. L. Murrie.

It is contended under the first assignment of error that the court should have sustained defendants' first special exception to plaintiffs' fourth amended original petition. This exception was to the effect that since the petition showed that the corporation had failed to pay its franchise tax and had ceased to exercise its corporate powers and privileges, and because the president and directors or managers of the corporation were not made parties to the suit, the action could not be maintained. The proposition urged is that the suit having been brought by the stockholders upon a cause of action which had accrued to the corporation and for the benefit of all stockholders, and being a cause of action in which all stockholders and creditors had an interest, and that plaintiff having alleged that the corporation had failed to pay its franchise tax, and ceased to be a going concern, that it had made an assignment of all of its assets for the benefit of the creditors, and no receiver having been appointed, that the president and directors were, under the law, trustees, charged with the power and duty of settling the affairs of the corporation, and of collecting its debts, and were therefore necessary parties. It will be seen that the proposition enlarges the scope of the assignment. The directors, as shown by the pleading, were Due Millsaps, Hugh McGrattan, I. E. Rose, Frank McGrattan, and J. H. Endacott. J. H. Endacott and Millsaps are the only two directors who were parties to the suit. By the provisions of Vernon's Sayles' Civil Statutes, art. 7399, when a corporation fails to pay its franchise tax, and the forfeiture of its right to do business in Texas, because of such failure, has been properly declared and recorded by the Secretary of State, it cannot sue nor can it defend a suit except one to forfeit its charter. It is true that the plaintiffs have alleged that the corporation had not paid its franchise tax, but they did not allege that the Secretary of State had forfeited the company's right to do business because such tax had not been paid.

[1] The statute requires the Secretary of State to enter upon the margin of the record kept in his office for that purpose the words "Rights to do business forfeited" and the date of such entry, before the company's right to sue or defend is denied. Pitts v. Cypress Shingle Co., 158 S. W. 799; Harvey v. Prov. Ins. Co., 156 S. W. 1127.

[2] It is provided by Vernon's Sayles' Civil Statutes, art. 1206, that upon the dissolution of any corporation, where no receiver has been appointed, and the president and directors or managers of the affairs of the corporation shall be trustees for the creditors and stockholders thereof, with full power to settle its affairs, collect outstanding

debts, etc.; but the rule is established in this state that the failure of a corporation to pay its franchise tax does not ipso facto work a dissolution. Canadian Country Club v. Johnson, 176 S. W. 835. Since plaintiff did not allege that the company had been denied the right to sue, and that it had been dissolved, the court correctly overruled the special exception.

By his second assignment appellant insists that the court erred in overruling his general demurrer to plaintiff's petition, and urges this proposition:

"Where a corporation is unable to pay its debts and is insolvent, and has, by its board of directors, made an assignment of all of its property, of every character, to a trustee or assignee for the benefit of its creditors, and ceased to do any character of business, and the trustee has sold all of its assets to a creditor, a stockholder has no interest in any asset so assigned by said corporation, and can maintain no suit, either for himself, the corporation, or trustee for the creditors."

The allegation in the petition with reference to this matter is:

"The majority of the directors of said corporation, without the knowledge and consent of the stockholders thereof, and without the knowledge and consent of these plaintiffs, but at the will and direction of the said Due Millsaps, conveyed to the defendant C. L. Murrie, as private trustee for the benefit of the creditors of the said McGrattan-Millsaps Company, all of the assets remaining and belonging to the said company of every nature, which plaintiffs allege amounted to $30,000 worth of merchandise, fixtures, live stock, accounts receivable, and money in the bank, and that said board of directors, without the consent of the stockholders in said corporation, and without the knowledge and consent of these plaintiffs, and at the will and direction of the said Due Millsaps, agreed that the said private trustee should convey the said property, and which conveyance was made to one of the creditors of the said McGrattan-Millsaps Company in order to liquidate the debts then outstanding against said company at the basis of fifty cents on the dollar, which debts plaintiffs now allege to have been liquidated in full, and that the said McGrattan-Millsaps Company now have no liabilities of any kind or character, and that this cause of action set up herein by these stockholders is the only asset which is known to one of these plaintiffs, and any recovery is subject to distribution among the stockholders of said corporation, as their interest in said corporation may appear, and for all of the reasons above set forth plaintiffs allege that they have a right to bring and maintain this suit in their names, for their benefit, and for the interest of all the stockholders in the McGrattan-Millsaps Company."

The second assignment of error is based on the court's action in overruling the general demurrer to the petition. Under this assignment appellant urges the proposition that where a corporation is unable to pay its debts and is insolvent, and has, by its board of directors, made an assignment of all its property to an assignee for the benefit of its creditors, and ceased to do any character of business, and the trustee has sold all of its assets to a creditor, a stockholder has no interest in any asset so assigned by the corporation, and can maintain no suit either for himself, the corporation, or as trustee for the creditors. In considering this and the preceding assignment, in the original opinion, we proceeded upon the idea, advanced in the briefs of both parties, that the allegations of plaintiff's petition showed a statutory assignment. A review of the petition has convinced us that the attorneys for appellant and appellee are mistaken as to the effect of the allegation. It will be seen that the pleader mentions the character of property which was conveyed to Murrie as a "private trustee," and that the conveyance was made for the purpose of paying the debts of the corporation for 50 cents on the dollar, and that all indebtedness has been satisfied.

[3] We think this is an allegation that the company has made a chattel mortgage for the benefit of its creditors, and is almost tantamount to a statement that the company has effected a composition with its creditors.

[4] It is an elementary rule of pleading that specific allegations will control general statements such as that "all of the assets" of the company passed to Murrie. Indulging every reasonable intendment in favor of the pleading, it cannot be construed to mean that a statutory assignment was made, since it is shown that all of the company's property did not pass to the assignee. It is specifically alleged that this chose in action did not pass. The allegation that the property was conveyed to a "private trustee," "at the will and direction" of appellant, precludes the idea that the pleader had in mind a general assignment.

[5] If there was no general assignment alleged, but the effect of the allegation is that a chattel mortgage or a conveyance in trust was made, of course no title to this cause of action was vested in Murrie.

[6] He took only the particular property conveyed, and the trust terminated when such property was sold and the debts all satisfied. Murrie was therefore not a necessary party to the suit, under the allegations, since the petition further discloses that the corporation was not dissolved; that Murrie had no right, under the assignment, to this cause of action; and further shows the futility of calling on the officers and directors to sue.

[7] We think the petition unquestionably shows that the right to maintain this action and prosecute it to a finality is in appellees. As said in Pomeroy's Equity Jurisprudence (3d Ed.) vol. 3, § 1095:

"If the facts as alleged show that the defendants charged with the wrongdoing, or some of them, constitute a majority of the directors or managing body at the time of commencing the suit, or that the directors, or a majority thereof, are still under the control of the wrongdoing defendants, so that a refusal of the managing body, if requested, to bring a suit in the name of the corporation may be inferred with reasonable certainty, then an action by a stockholder may be maintained without alleging or proving any notice, request, demand, or express refusal."

The language of the petition clearly brings this case within the rule. Much is said by

appellant, in discussing the effect of the supposed general assignment and the sale by the trustee to one of the creditors, with regard to the right of the creditor who acquired the assets from Murrie to maintain this suit. In this connection the following language from the above-quoted section of Pomeroy is pertinent:

"Although the corporation holds all the title, legal or equitable, to the corporate property, and is the immediate cestui que trust under the directors with respect to such property, and is theoretically the only proper party to sue for wrongful dealings with that property, yet courts of equity recognize the truth that the stockholders are ultimately the only beneficiaries; that their rights are really, though indirectly, protected by remedies given to the corporation; and that the final object of suits by the corporation is to maintain the interests of the stockholders. While, in general, actions to obtain relief against wrongful dealings with the corporate property by directors and officers must be brought by and in the name of the corporation, yet if, in any such case, the corporation should refuse to bring a suit, the courts have seen that the stockholder would be without any immediate and certain remedy, unless a modification of the general rule were admitted. To that end the following modification of the general rule, stated in the last preceding paragraph, has been established as firmly and surely as the rule itself: Wherever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongful dealing with corporate property or wrongful exercise of corporate franchises, so that the remedy should regularly be obtained through a suit by and in the name of the corporation, and the corporation, either actually or virtually, refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers, and other persons; but it is absolutely indispensable that the corporation itself should be joined as a party—usually as a codefendant. The rationale of this rule should not be misapprehended. The stockholder does not bring such a suit because his rights have been directly violated, or because the cause of action is his, or because he is entitled to the release sought. He is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually, or as the representative of the class, may commence the suit, and may prosecute it to judgment, but in every other respect the action is the ordinary one brought by the corporation. It is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder plaintiff. The corporation is therefore an indispensable, necessary party, not simply on the general principles of equity pleading in order that it may be bound by the decree, but in order that the release, when granted, may be awarded to it as a party to the record by the decree. This view completely answers the objections which are sometimes raised in suits of this class that the plaintiff has no interest in the subject-matter of the controversy nor in the relief. In fact, the plaintiff has no such direct interest; the defendant corporation alone has any direct interest; the plaintiff is permitted, notwithstanding his want of interest, to maintain the action solely to prevent and otherwise plead the failure of justice."

In disposing of the first two assignments we have said this much with reference to the pleadings.

The third assignment complains of the court's refusal to direct a verdict for appellant, and the first proposition advanced is that the undisputed evidence in this case, and the pleadings by both plaintiffs and defendants, showed that after the cause of action asserted accrued in favor of the corporation, that the corporation became insolvent, ceased to do business, and finally abandoned its business, and the directors and the corporation made a general assignment of all its property for the benefit of its creditors, and that all of said property was sold by the assignee for the payment of the debts, and therefore it conclusively appears that neither the plaintiffs, as stockholders, nor the corporation, had any cause of action against appellant. We do not agree with appellant in his statement that the evidence shows a general assignment. The instrument executed by Hugh McGrattan as president, and Due Millsaps as vice president, was intended by the scrivener to be a general assignment under the statutes, and is formal and in compliance with the statutory requirements in every particular. It recites:

"Now, therefore, in consideration of the premises, and of the sum of one dollar to him in hand paid by the said C. L. Murrie, doth by these presents bargain, convey, and set over unto the said C. L. Murrie all of its real and personal estate other than that which is by law exempt from execution."

No inventory of the assets appears in the record, but the above recital shows that real estate as well as personalty was conveyed to the assignee.

[8] While we have not been able to find in the statement of facts any evidence of what real estate the company owned, we must presume that the assignor would not have undertaken to convey real estate unless the corporation really owned it. As was said by Stayton, Chief Justice, in Shropshire v. Behrens, 77 Tex. 275, 13 S. W. 1043:

"The instrument purports to convey all property, both real and personal, of the corporation, while the inventory attached to it shows only personal property, but does not exclude the existence of realty also. * * * From the face of the instrument, it must be held that the intent was to assign both real and personal property, and that the instrument was not executed under the corporate seal. While the use of seals has been rendered unnecessary to the validity of contracts between individuals, the statutes of this state still require that corporations shall evidence their contracts by use of their corporate seals. They are excepted from the operation of the law which renders the use of seals unnecessary in contracts between individuals. * * * We think it is clear that the instrument in question, because not executed under the corporate seal, is insufficient to convey to the assignee any real estate owned by the corporation which to give validity to the assignment was necessary. If, in fact, the corporation owned no real property, this fact should have been distinctly alleged, and such fact cannot be implied either from the averments of the petition or language of the instrument."

The same rule is announced in Allcott v. Spencer Optical Mnfg. Co., 31 S. W. 833.

[9] While under these authorities the at-

tempted assignment is void as a conveyance under the statute, being a common-law mortgage, it is not void as such because of the failure of the corporation to authenticate it by the corporate seal. The practical construction placed upon it by all the parties sustains our view. Fowler v. Bell et al., 35 S. W. 822. It is provided by Revised Statutes, art. 1205, how a corporation may be dissolved. In view of this statute, and in the light of the discussion by the Supreme Court, in the case of Lyons-Thomas Hardware Co. v. Perry Stove Mnfg. Co., 86 Tex. 143, 24 S. W. 19, 20, 22 L. R. A. 802, it cannot be contended in this case that a dissolution of the corporation is either set up in the pleadings or established by the evidence.

[10] The company is therefore not only a proper, but a necessary, party to the action; and since Murrie is not an assignee under the statute, as seems to have been the idea of both appellant's and appellees' attorneys, he should have been dismissed from the action. It is also clear that, under the allegations, appellees have the right to maintain this suit and prosecute it to final judgment.

The substance of the second proposition under the third assignment, and of the fourth, fifth, and seventh assignments, is that the undisputed evidence failed to show that Due Millsaps improperly dominated and controlled a majority of the directors of the company, and that this issue should not have been submitted to the jury; and, further, that the court erred in failing to instruct the jury what constituted "improper domination and control."

[11] The last objection attacks the charge because of an omission, and, since appellant failed to ask a special charge supplying the defect, he cannot complain, even if we admit that a charge defining that term was necessary.

[12] We said in our original opinion, and still think, that the evidence amply supports this finding of the jury. The record shows that Millsaps owned 111 shares, Frank McGrattan and Hugh McGrattan 84 shares, I. E. Rose 10 shares, and Endacott 30 shares, of the 400 shares of stock in the McGrattan-Millsaps Company. The five shareholders named were the officers and directors of the company. I. E. Rose lived in Dallas, and had invested his money in the 10 shares owned by him at the request of Millsaps, and upon a guaranty by Millsaps that he would not lose anything on the investment. It appears that, after the assets of the company were sold, Millsaps refunded to Rose the amount paid for his stock. Rose never attended a directors' meeting, and he was simply the alter ego of Millsaps in the corporation. In July, 1914, Millsaps, who lived in Wichita Falls, went to Weatherford, where the other branch of the company's business was being conducted by Hugh McGrattan as president, and Endacott as secretary, of the corporation,

196 S.W.—14

and without any legal notice, at the request of Millsaps, McGrattan called and held a meeting of the board of directors for the purpose of authorizing Millsaps to dispose of the company's property. It appears that Frank McGrattan, although a director, and present in the town of Weatherford, did not attend the meeting of the board, but verbally authorized Millsaps and his brother Hugh McGrattan to represent him. After Hugh McGrattan had been served with citation in this case, he made no effort whatever to protect the company's interest, and stated while on the witness stand that he would not voluntarily come into court and ask that the benefits of the litigation, if any, be paid to the company. At the July meeting of the directors, composed of only Millsaps, Hugh McGrattan, and Endacott, although admitting that it was a called meeting, and that the stockholders at large were ignorant of its purpose, it was agreed that Millsaps should purchase $35,000 worth of the company's property at a price which the jury found to be below its real value, and the record shows that these goods were situated in Wichita Falls, and fails to show that Hugh McGrattan and Endacott, who together with McGrattan authorized the purchase, knew anything of the value of the Wichita stock. It is further shown that McGrattan purchased the company's accounts, amounting to over $6,000 or $7,000, for $1,750. It further appears that Endacott, the secretary of the company, and an employé in the store at Weatherford, authorized the institution of this suit, and afterwards gave Millsaps a written statement to the effect that he had not authorized any one to file the suit in his name. After the July meeting it further appears that Frank McGrattan and I. E. Rose, who had no actual knowledge of what was done at that time, attempted to ratify the sale to Millsaps and the proceedings of the meeting. This, together with other testimony to the same purpose, was, we think, sufficient to sustain the finding of the jury.

The answer of the jury to special issue No. 4, in regard to the reasonable cash market value of all stock in the P. B. M. Company and the P. H. Pennington Company, which had been given by said two companies in consideration of the merchandise received by them from the McGrattan-Millsaps Company, was $35,629.65, is also amply supported by the evidence. In fact, the evidence of appellant, and the documentary evidence, in the way of affidavits, filed with the Secretary of State, is overwhelming in supporting this finding.

[13] We sustain the appellees' first cross-assignment, to the effect that the court erred in rendering judgment for the plaintiffs individually for their respective interests in the amount of the recovery. The judgment must necessarily be for and in behalf of all stockholders and in favor of the company.

[14] The court also erred in declaring the charter of the company forfeited. The state of Texas was not a party to the suit, and the record shows that the company is still a legally existing corporation. The record is insufficient to show that the appellees, as individuals, or that the corporation itself, has ratified the illegal acts alleged to have been committed by Millsaps and the board of directors.

Our original opinion, which was based upon facts upon which the parties agreed in their briefs, and which we have heretofore found do not exist, is withdrawn, and the judgment heretofore rendered is set aside, and it is decreed that the McGrattan-Millsaps Company, and the appellees as stockholders of said company, and for its use and benefit, do have and recover of Due Millsaps the sum of $9,829.65, and in so far as the judgment of the court below dissolves the corporation it is reversed. Since neither the assignee nor the parties to whom he sold the assets of the company are parties to this suit, we could not adjudge their rights if we thought they were entitled to participate in the fund. We do not undertake to dispose of, or in any way apportion, the amount recovered. The record shows that all indebtedness against the company has been satisfied, and that it has no creditors, and the apportionment of the fund recovered is a matter to be determined by the stockholders of the company. As here reformed and rendered, the judgment is affirmed.